UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIANT TAX CREDIT FUND 31-a, LTD, and
ALLIANT TAX CREDIT 31, INC.,

         Plaintiffs,

v.

TAYLOR 8 ASSOCIATES LLC, RONALD D. WEAVER, JR., and NORTH END VILLAGE DEVELOPERS, LLC,

         Defendants.

                                           /

CASE NO. 08-12938

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 17). The Court heard oral argument on December 17, 2008, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the Court GRANTS the motion.

**I. STATEMENT OF FACTS**

Plaintiff Alliant Tax Credit Fund 31-A, Ltd, the Investor Limited Partner and Plaintiff Alliant Tax Credit 31, Inc., the Administrative Limited Partner, (collectively Alliant) formed a partnership with Defendants, Taylor 8 Assoc., LLC, Ronald Weaver, Jr., and North End Village Developers to take advantage of federal low income housing tax credits. The Partnership invests in real property and provides low income and "market-rate" housing through the construction and operation of a housing complex located in Detroit. The partnership is governed by the Amended and Restated Agreement of Limited Partnership

of North End Village Limited Dividend Housing Association Limited Partnership (Partnership Agreement).  Under the Agreement, Plaintiffs provided capital to the Partnership and in turn received a vast majority of the qualifying tax credits and retained significant interest in cash flows and residual value.  Taylor 8, the General Partner, manages the North End Village Limited Dividend Housing Association Limited Partnership, which the parties formed in April 2004.

According to Plaintiffs, Taylor 8 has failed and refused to satisfy its obligations resulting in numerous defaults under the Partnership Agreement.  On May 28, 2008, Plaintiffs provided notice of default, and on June 17, 2008, Alliant notified Taylor 8 it decided to remove it as General Partner because Taylor 8 has failed to convert the construction loan to a permanent financing loan.

Defendants do not contest that certain construction loan documents have been breached because they failed to complete a loan conversion with Bank of America.  Defendants nevertheless assert that Alliant is not entitled to summary judgment because the failure was caused by Bank of America's conduct:  It changed loan officers and project managers, who in turn changed the requirements for conversion.  Because of the problems Taylor 8 experienced, it pursued alternative financing.  See Defs.' Exs. C and D.  Although Taylor 8 obtained a commitment for alternative financing, the commitment did not come to fruition.  According to Defendants, after the new lender learned of this litigation, it declined to proceed.

## II.  STANDARD OF REVIEW

Under Rule 56(c), a court should grant a motion for summary judgment only if the evidence indicates that no genuine issue of material fact exists.  To avoid summary judgment, the opposing party must set out sufficient evidence in the record to allow a reasonable jury to find for him at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  A court tests the sufficiency of the evidence against the substantive standard of proof that would control at trial.  Anderson, 477 U.S. at 248.

The moving party must show that there is an absence of evidence to support the non-moving party's case.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.  A court disposing of a summary judgment motion must consider the evidence in the light most favorable to the non-moving party.  Matsushita, 475 U.S. 574.

## III.  ANALYSIS

### A.  Viability of the Impossibility Defense

Count I of the Complaint advances a claim for Breach of Partnership Agreement.  The Partnership Agreement allows for removal of the General Partner in the event of a major default.  The Partnership Agreement defines and illustrates the term in §11.4, entitled "Special Removal Rights."  It reads in relevant part as follows:

> Notwithstanding any other provision of this Agreement to the contrary, the following events shall be considered a "Major Default."

\* \* \*

> Sect. 11.4(A)(i)(c): when the General Partner is in material breach of any provision of the Agreement "or "any other documents" for fifteen (15) days after notice thereof has been given by the Administrative Limited Partner, provided, however, that if such breach is of the type that cannot reasonably be cured within fifteen (15) days, the Administrative Limited Partner shall not have the right to remove a General Partner under this Section 11.4(A) with respect to such breach for a ninety (90) day period after such notice is given so long as the G[eneral] P[artner] is diligently pursuing a cure of such breach at all times during such ninety (90) day period and accomplishes such cure within such ninety (90) day period.

\* \* \*

> Sect. 11.4(A)(ii)(a): when the Partnership itself is "in material breach of any Project Document or any other material agreement or document. . .affecting the Partnership, which breach has failed to have been cured within any applicable cure or grace period.

Pls.' Ex. 4.

Taylor 8 admits that it failed to meet the conversion conditions on the construction loan documents, and there is no dispute that those documents constitute Project Documents under the Partnership Agreement.  See Pls.' Ex. 3, ¶ 27.  On May 28, 2008, the Administrative Limited Partner gave notice that Taylor 8 was in major default for, among other things, "failing to satisfy all Conversion Conditions on or before the Termination Date of April 23, 2008."  Pls.' Ex. 10.  Even assuming Taylor 8 had the right to cure its major default within 90 days, no cure has occurred.

Nevertheless, under Michigan law, "[a] promisor's liability may be extinguished in the event his or her contractual promise becomes objectively impossible to perform." Bissell v. L.W. Edison Co., 156 N.W.2d 623 (Mich. Ct. App. 1967).  Defendants rely on the doctrine of supervening impossibility to excuse the breach.  They contend that after the Agreement was executed, Taylor 8's obligations became impracticable "because of

4

[the] extreme and unreasonable difficulty. . .involved" in meeting the conversion requirements. See id. (internal quotations omitted).

According to Defendants, when the Partnership formed a business relationship with Bank of America in 2004, no one could have predicted what would happen to the real estate market. In 2008, at the time of conversion, Bank of American provided the Partnership with a conversion checklist, but the decline in real property values coupled with bad loans led to reluctance on the part of Bank of American to "clos[e] the deal with the Partnership. Accordingly, Bank of America engaged in an ongoing pattern of asserting ever-changing demands that were vague, unreasonable, untimely and impossible to achieve." Defs.' Brief at 15. When Defendants realized what was going on, they searched for and obtained a commitment from another lender.

Defendants' situation does fall within the scope of circumstances encompassed by the doctrine of impossibility. "Generally, the excuse of impossibility of performance is limited to the destruction of the means of performance by an act of God, vis major, or by law." Stasyszyn v. Sutton East Associates, 161 A.D.2d 269, 555 N.Y.S.2d 297, 299 (1990) (internal quotation omitted). Accord, Vowels v. Arthur Murray Studios of Michigan, Inc., 163 N.W.2d 35 (Mich. Ct. App. 1968) (allowing rescission of the parties' contract for dance lessons when the agent closed the dance studio before the lessons were provided because the closing of the dance studio made performance of the contract impossible). More importantly, under Michigan law, "[e]conomic unprofitableness is not the equivalent to impossibility of performance. Subsequent events which in the nature of things do not render performance impossible, but only

5

render it more difficult, burdensome, or expensive, will not operate to relieve [a] party of its contractual obligations." Chase v. Clinton County, 217 N.W. 565 (Mich. 1928). See also, Milligan v. Haggerty, 295 N.W. 560 (Mich. 1941) (rejecting the defense of impossibility because subsequent market conditions rendered the performance unprofitable).

In sum, the Court finds the circumstances here are not analogous to those warranting the defense of impossibility. The Partnership Agreement addressed a failure to convert to permanent financing or to obtain financing. Therefore, "[t]he very terms of the contract indicate that Defendants' failure to obtain financing had been expressly considered and contemplated by the parties. . . . Because the event was foreseeable, contemplated, and anticipated, the failure to obtain financing cannot be excused by the defense of impossibility." Vergote v. K Mart Corp. (After Remand), 404 N.W.2d 711 (Mich. Ct. App. 1987) (citation omitted). See also Comment b to § 261 of the Restatement 2d of Contracts (noting that "[t]he continuation of existing market conditions and of the financial situation of the parties are ordinarily not such assumptions, so that mere market shifts or financial inability do not usually effect discharge under the rule stated in this section"). Where the contingency was reasonably foreseeable at the time of contracting, there is no legal basis for excusing Defendants' failure to get permanent financing. Accordingly, the Court finds, as a matter of law, that Taylor 8 breached the parties' Agreement.

### B. Removal of Taylor 8

Plaintiffs also ask for summary judgment on Count III of the Complaint. Specifically, Alliant requests a declaratory judgment that Plaintiffs have the right to remove Defendant Taylor 8 as a General Partner.[1]

There is no question the Agreement unambiguously allows the limited partners to remove the General Partner.  See Pls.' Ex. 4, ¶ 11.4, Alliant sent notice of default to Taylor 8 on May 28, 2008.  Pls.' Ex. 10.  Alliant subsequently notified Taylor 8 that it was exercising its removal right under the Agreement.  Pls.' Ex. 11.

The fact that Taylor 8 used its best efforts to obtain alternate financing does not alter the analysis because even if the Agreement allows for Defendants to cure, it requires that the cure be accomplished within 90 days.  See Agreement, § 11.4.  That did not happen.  Therefore, there is no contractual basis for excusing the breach.

Moreover, in light of the Court's finding that, as a matter of law, the impossibility of performance doctrine does not excuse Taylor 8's nonperformance, there is no reason to delay summary judgment while Defendants engage in discovery relating to that

---

[1] Plaintiffs list other matters for which they seek a declaratory judgment, including that they have not breached any obligations or commitments to Taylor 8, and that Taylor 8 has no further right of interest in the Partnership, that Taylor 8 has no authority to act on behalf of the Partnership because it has been removed pursuant to the Partnership Agreement, that Taylor 8 is required to transfer all Partnership Property, along with bank account information and books of account for the partnership, and that Taylor 8 is not released from any liabilities it incurred during the period it was General Partner.  Plaintiffs did not articulate the factual and contractual basis with governing legal authority sufficient for the Court to enter the requested declaratory relief.  The Court reaches the same conclusion relative to Plaintiffs' request for an award of fees and costs under 11.4(B) of the Partnership Agreement and money damages.

7

defense. Accordingly, the Court finds that Plaintiffs have the right to remove Taylor 8 as a General Partner pursuant to the Agreement.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment

**IT IS SO ORDERED.**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

Date: March 12, 2009

## CERTIFICATE OF SERVICE

A copy of this Order was mailed and/or electronically filed to counsel of record on this date.

        s/Bernadette M. Thebolt
        Deputy Clerk