## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALLIANT TAX CREDIT FUND 31-a, LTD, and
ALLIANT TAX CREDIT 31, INC.,

CASE NO. 08-12938

               Plaintiffs,

HON. MARIANNE O. BATTANI

v.

TAYLOR 8 ASSOCIATES LLC, RONALD D.
WEAVER, JR., and NORTH END VILLAGE
DEVELOPERS, LLC,

               Defendants.

_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN
### PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. No. 28). The Court already awarded partial summary judgment to Plaintiffs Alliant Tax Credit Fund 31-a, Ltd, and Alliant Tax Credit 31, Inc., (collectively "Alliant") on their claim that the Partnership Agreement allowed them to remove Defendant Taylor 8 Associates, LLC, ("Taylor 8") as managing partner. Now Plaintiffs ask for the Court for an award of damages against Taylor 8 in the amount of $1,351,832.13, plus interest at a rate of $241.67 per day, and $67,882.92 for attorneys' fees and costs.

In addition, Plaintiffs seek an award of summary judgment against Defendants Ronald Weaver, Jr., and The North End Village Developers ("The Village"), jointly and severally, on their claims for Breach of the Guaranty Agreement (Count IV), and Declaratory Judgment (Count V). Finally, Plaintiffs ask for a declaration that they have not breached section 3.4(D) of the Partnership Agreement.

The Court heard oral argument, and at the conclusion of the hearing took this matter under advisement.  For the reasons that follow, the Court **GRANTS in part and DENIES in part** the motion.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Alliant Tax Credit Fund 31-A, Ltd, the Investor Limited Partner and Plaintiff Alliant Tax Credit 31, Inc., the Administrative Limited Partner formed a partnership with Defendants, Taylor 8 Assoc., LLC, Ronald Weaver, Jr., and North End Village Developers to take advantage of federal low income housing tax credits. The Partnership invests in real property and provides low income and "market-rate" housing through the construction and operation of a housing complex located in Detroit.  The partnership is governed by the Amended and Restated Agreement of Limited Partnership of North End Village Limited Dividend Housing Association Limited Partnership ("Partnership Agreement").  Under the Agreement, Plaintiffs provided capital to the Partnership and in turn received a vast majority of the qualifying tax credits and retained significant interest in cash flows and residual value.  Taylor 8, the General Partner, managed the North End Village Limited Dividend Housing Association Limited Partnership, which the parties formed in April 2004.

The impetus of this motion is the Court's previous holding that Taylor 8 breached the Partnership Agreement and that Alliant had the right to remove Taylor 8 as General Partner.  The facts necessary to resolve the claims raised by Plaintiffs are included in the analysis.

## II. STANDARD OF REVIEW

Under Rule 56(c), a court should grant a motion for summary judgment only if the evidence indicates that no genuine issue of material fact exists.  To avoid summary judgment, the opposing party must set out sufficient evidence in the record to allow a reasonable jury to find for him at trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  A court tests the sufficiency of the evidence against the substantive standard of proof that would control at trial.  <u>Anderson</u>, 477 U.S. at 248.

The moving party must show that there is an absence of evidence to support the nonmoving party's case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 256.  A court disposing of a summary judgment motion must consider the evidence in the light most favorable to the nonmoving party.  <u>Matsushita</u>, 475 U.S. 574.

## III. ANALYSIS

### A. Damages Incurred as a Result of Taylor 8's Defaults

It is undisputed that Bank of American, N.A. ("BOA") lent the Partnership principal in the amount of $1,200,000 under the terms of the Construction Loan.  BOA extended the expiration date on the loan several times to afford Taylor 8 additional time to satisfy the conversion conditions.  On March 21, 2008, BOA advised Taylor 8 that the expiration date would not be extended beyond April 23, 2008.

3

After the Construction Loan expired, the Bank paid $1,200,000 to Impact C.I.L. LLC, to whom it had assigned its rights against the Partnership.  Alliant's Ex 5, Weaver Dep. at 54-55, Ex. 9, Charles S. Bibeau Dep. at 18, and Ex. 8.  BOA subsequently sent a letter to the Partnership, demanding payment of all amounts BOA paid in connection with the Letter of Credit, as well as additional fees and sums to which the Bank was entitled pursuant to section 5 of the Construction Loan.  Alliant's Ex. 3.  According to the corporate representative for BOA, Charles Bibeau, the following amounts must be paid to cure the Partnership's defaults under the Construction loan:

$1,200,000 due under the Letter of Credit (¶ 5.1)

$285 in processing fees associated with the draw on the letter of Credit  (¶5.2(b))

$83,424.14, in interest accrued since the draw date (¶¶ 1.1, 5.1)

$48,000 in late charges (¶ 5.4.3)

$3,950 for an appraisal of the Partnership's property (¶ 5.3)

$16,173 in legal and administrative fees incurred by the Bank (¶ 5.3(d).

Plaintiffs maintain that they are entitled to damages as a result of Taylor 8's failure to replace the construction loan with a permanent loan.  The Partnership Agreement requires Taylor 8 to comply with the following obligations:

> to indemnify, defend, protect and hold [Alliant] harmless from and against any and all losses, costs, damages, liabilities, fines, penalties, actions, causes of actions, suits, and expenses incurred in connection with a Major Default and the exercise of the remedies provided above, including without limitation, all reasonable legal fees and other reasonable expenses incurred in connection therewith.

Pls.' Ex. 4, Partnership Agreement, § 11.4(B).  The Partnership Agreement further provides that Plaintiffs have no liability "for any debts, liabilities, contracts, or obligations

of the Partnership, except as provided by law.  See Pls.' Ex. 4, ¶ 3.7 (Liability of Limited Partners).  According to Alliant, because Taylor 8 breached the parties' Partnership Agreement, Alliant will be required to pay BOA at least $1,351,832.13, plus additional interest, accruing at a rate of $241.67 per day.  Alliant seeks to be made whole for the out-of-pocket payments it will make to the Bank as a result of Taylor 8's failure to pay amounts due under the Construction Loan and for allowing the Construction Loan to expire.

"A party asserting a claim has the burden of proving its damages with reasonable certainty." Ensink v. Mecosta Co. Gen. Hosp., 687 N.W.2d 143, 147 (Mich. Ct. App. 2004) (citation omitted).  Damages based on speculation are not recoverable, but "damages are not speculative merely because they cannot be ascertained with mathematical precision." Further, "if the fact of damages is established, the certainty necessary to establishing the amount of damages is relaxed." Id.

Plaintiffs contend that in light of their obligation to prove damages with "reasonable certainty, not absolute precision," they have met their burden.  The testimony of Charles Bibeau demonstrates that the amount is reasonably certain.  The Court disagrees.

It is undisputed that no money has been paid to the Bank.  Alliant's reliance on the relaxed standard is misplaced where it is seeking to collect anticipatory damages.[1]  Unlike a plaintiff that cannot calculate with mathematical precision the amount of damages it will suffer, here, once damages actually are incurred, speculation as to the amount will not be

---

[1]After oral argument, Alliant filed a supplemental brief asking the Court to award it $22,000 to satisfy the Partnership's unpaid electric bills.  It also claims it paid $97,924.14 in interest to BOA.  Because these documents were filed after oral argument and without leave of the Court, Defendants had no opportunity to respond. Accordingly, the supplemental pleadings do not factor into the Court's decision.

5

required.   Moreover, it appears that BOA has instituted foreclosure proceedings. Consequently, the true measure of damages cannot be known until that process is complete.   Because the Court finds the request premature, it declines to address Defendants' argument that Alliant failed to mitigate the losses suffered.

### B.  Reasonable Legal Fees

The Partnership Agreement provides recovery of legal fees and expenses incurred in connection with this litigation.  Paragraph 11.4(B) of the Partnership Agreement entitles Alliant to recover "all losses, costs, damages. . .incurred in connection with a Major default. . . including, without limitation, all reasonable legal fees and other reasonable expenses incurred in connection therewith."  Alliant's Ex. 4, Partnership Agreement, ¶ 11.4(B).  The Partnership Agreement also provides that for any court proceedings brought in connection with the Agreement, the prevailing party (whether at trial or appeal) shall be entitled to recover from the other party "all costs, expenses, and reasonable attorneys' fees incident to any such proceedings."  Id., ¶ 16.14.  The Partnership Agreement defines a prevailing party as the party "in whose favor the final judgment or award is entered in any such judicial or arbitration proceedings."  Id.

Plaintiffs provide the Court with a list of actions they have taken in this litigation, including filing a Verified Complaint and several motions, and engaging in discovery. According to Plaintiffs, they have incurred $67,882.92 in attorneys' fees and costs in connection with this lawsuit.  Alliant's Ex. 13, Doran Aff, ¶ 12.  Based on the complicated nature of the proceedings and the law firm's status, Plaintiffs conclude that the rates they request are reasonable.

6

Plaintiffs may be correct; however, they have not provided any billings or documentation to substantiate the claim for attorney fees or to document the reasonableness of the claim. Plaintiffs submission of the affidavit of Brian Doran, President of Alliant Real Investments, LLC, to make its case, is not enough.[2] Alliant's Ex. 13. The proper method for determinating an award of attorney fees is to establish a reasonable hourly rate customarily charged in the locality for similar legal services, than multiply the rate by a reasonable number of hours expended. Insufficient analysis is provided in that regard.

In addition, the Court observes that reasonableness is not necessarily the amount paid by the client. As the requesting party, Plaintiffs bear the burden of proving the reasonableness of the requested fees. Smith v. Khouri, 751 N.W.2d 472 (Mich. 2008). Moreover, here, where no final judgment has been entered, the Court finds characterization of Alliant as the prevailing party before the conclusion of this lawsuit is premature. Accordingly, the request for fees is denied without prejudice.

## C. Breach of the Guaranty Agreement

Plaintiffs also seek summary judgment against Defendants Weaver and The Village on Counts IV and V of the Verified Complaint based on the Guaranty Agreement dated April 21, 2004. Plaintiffs demanded the Guarantors take immediate action to cure Taylor 8's Major Defaults on May 28, 2008. Alliant's Ex. 16. They reiterated the demand on June 17, 2008. Alliant's Ex. 17.

---

[2]Although Plaintiffs informed the Court in their reply brief that they would provide documentation for *in camera* review, such review would not provide a sufficient basis for Defendants to raise objections to the reasonableness.

Under the terms of the Guaranty Agreement,

Each Guarantor absolutely, irrevocably and unconditionally fully guarantees as a primary obligor and not merely as a surety, to the partnership and the Investor Limited Partner the due, prompt and competed performance of each and every one of the obligations of the General Partners under the Partnership Agreement, including, without limitation, the following:

(A) the payment and performance by the General Partners of each and every one of the following obligations under the following provisions of the Partnership Agreement:
                    * * *
        (ii) the obligation to pay all Development Deficits under Section 4.2. . . .

Development Deficits are defined as those funds that are required to "achieve Completion of Construction, including paying all amounts due under and pursuant to the Construction agreements. . ." and those funds that are required to "achieve closing of the Construction Loan and funding in full of the Permanent Loan (including, without limitation, repayment in full of the Construction Loan). . . ." Alliant's Ex. 14, ¶ 4.2.

There is no dispute that Alliant's demands have not been satisfied despite the guarantors' agreement to "pay immediately, upon receipt of written demand. . . ." Alliant's Ex. 14, ¶ 3. Moreover, Defendants do not challenge Plaintiffs' request for summary judgment as to The Village. However, Defendants do contest the liability of Defendant Ronald Weaver, Jr. It is undisputed that the Guaranty Agreement dated April 21, 2004, was signed not by Weaver, Jr., but by Defendant Weaver's father. Weaver, Jr. took over management after his father, Ronald Weaver, Sr., who was a limited partner, was killed. Defs.' Ex. C.

Plaintiffs maintain that Weaver, Jr. is the "successor-in-interest" and a party to the Guaranty Agreement based on his answer to the Complaint and a response to a question

8

asked at his deposition. Paragraph 5 of the Verified Complaint reads, "Defendant Weaver is an individual residing in Detroit, Michigan. Weaver is the successor-in-interest to Ronald D. Weaver, Sr., and is a guarantor under the Guaranty Agreement." In their Answer, Defendants "admit said allegations." See Answer to Complaint. At his deposition, Weaver was asked, "Who are the parties to the Guaranty Agreement?" He responded, "Taylor 8 and myself." See Pls.' reply brief at 5.

The Court finds these two "admissions" do not support an award of summary judgment against Weaver, Jr. on this claim. His answer, which does not identify either Guarantor correctly, does not alter the plain and unambiguous language of the Guaranty Agreement or the absence of his signature on the Agreement. See Rory v. Continental Ins. Co., 703 N.W.2d 23, 41 (Mich. 2005) (noting the rules of contract interpretation). Nor does his response to the Verified Complaint. The terms of the Guarantor Agreement itself must dictate whether Weaver can be found liable.

### D.  Capital Contributions to the Partnership

The final claim advanced by Alliant is for declaratory relief that Section 3.4 of the Partnership Agreement has not been breached. Article 3 of the Partnership Agreement covers capital contributions and default by a limited partner. Alliant's Ex. 4. Under subsection D, $396,594 "shall be payable upon the last to occur of (i) satisfaction of all conditions precedent to the payment set forth in Paragraphs A and B above; (ii) the attainment of Rental Achievement; (iii) Cost Certification; (iv) Issuance of Forms 8609 for the entire Apartment Complex or each building thereof, as applicable; (v) Permanent Loan Closing. . . . Id.

9

The provision requires Plaintiffs to make specified capital contributions, provided enumerated conditions occurred.  One of those conditions was the permanent loan closing. Because that closing has not happened, and the Court finds that Plaintiffs are not responsible for the $396,594 payment.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** Plaintiffs' motion.  Plaintiffs' request for attorneys' fees, and damages is **DENIED** without prejudice.  Their request for judgment that the Guaranty Agreement has been breached is **DENIED** as to Weaver, Jr., and **GRANTED** as to The Village**.**  Plaintiffs' request for a declaratory judgment that they do not owe $396,594 is **GRANTED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date:  October 9, 2009

## CERTIFICATE OF SERVICE

A copy of this Order was mailed and/or electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt
Case Manager